**Augusto ODONE, Plaintiff,**

v.

**CRODA INTERNATIONAL PLC., Defendant.**

**Civil Action No. 94-2808 (RMU/PJA).**

United States District Court,
District of Columbia.

Jan. 15, 1997.

Bruce Alexander McDonald, Washington, DC, for Plaintiff.

Walter Donald Ames, Thomas Pavelko, for Defendant.

## MEMORANDUM ORDER

ATTRIDGE, United States Magistrate Judge.

### *Background*

Pending before the Court in the above-captioned patient infringement action is a motion [# 31] filed on September 25, 1996, pursuant to Fed.R.Civ.P. 37(a), by the plaintiff, Mr. Augusto Odone, to compel the defendant, Croda International, to release documents exchanged between the defendant and its British patent agent, C.P. Wain [1], "evidencing communications between [Mr. Wain] and Defendant relating to the issue of whether to name Mr. Odone as an inventor in the original [British] patent application filings". [Pl's mot. at 2; Def's opp. at 3]. The plaintiff asserts that these correspondence are the subject of plaintiff's interrogatory no. 8, served October 27, 1995:

> All documents and things regarding any application or registration by or on behalf of Defendant to patent, in any jurisdiction, any method for using any compound or composition comprising LCFAs.

[Pl's mot., exh. A at 10 & cert. of serv.], to which the defendant responded on June 5, 1996:

> If reasonably limited as to time, defendant will produce such documents where they are maintained.

[Pl's reply, exh. A at 5 & cert. of serv.]. The plaintiff argues that during the September 23, 1996, deposition the patent agent inappropriately asserted attorney-client privilege and "stated that documents evidencing communications between he and Defendant relating to the issue of whether to name Mr. Odone as an inventor in the original patent application filings exist but that they had been purged from the files which were produced to Plaintiff." [Pl's mot. at 2]. The defendant, in its October 10, 1996, opposition to the motion, asserts that the communications are indeed privileged, though not based on the federal common law attorney-client privilege, but rather pursuant to section 280 of the British Copyright, Designs and Patents Act of 1988, which accords attorney-client privileges to communications between patent agents and their clients.[2] [Def's opp.

1. Mr. Wain is "not an employee, managing agent or director of the party defendant." [Def's opp, exhibit A at 2]

2. Section 280 provides in pertinent part:

(1) This section applies to communications as to any matter relating to the protection of any invention, design, technical information, or trade mark [*or service mark*], or as to any matter involving passing off.

(2) Any such communication—

(a) between a person and his patent agent, or

(b) for the purpose of obtaining, or in response to a request for, information which a person is seeking for the purpose of instructing his patent agent, is privileged from disclosure in legal proceedings in England, Wales or Northern Ireland in the same way as a communication between a person and his solicitor or, as the case may be, a communication for the purpose of obtaining, or in response to a request for, information which a person seeks for the purpose of instructing his solicitor.

(3) In subsection (2) "patent agent" means—

(a) a registered patent agent or a person who is on the European list,

(b) a partnership entitled to describe itself as a firm of patent agents or as a firm carrying on the business of a European patent attorney, or

(c) a body corporate entitled to describe himself as a patent agent or as a company carrying on the business of a European patent attorney.

* * * * * *

*Notes:*

1. This section came into force on August 13, 1990.

[Def's opp., exh. C]. Although this Act did not come into force until two years after the communications at issue took place [Pl's reply at 1], the former civil code sections—British Civil Evidence Act of 1968, recodified as the Patent Act of

at 3 & exh. B at 1]. The defendant argues that, in the interest of comity and because the communications do not "touch base" with the United States, the British patent agent "attorney client" privilege should be honored with regard to communications between the deponent and the defendant. [Def's opp. at 5]. The plaintiff, in a reply filed October 22, 1996, disputes the defendant's assertion that the communications do not touch base in this country and asserts that the defendant "has made no showing as to the substance of the communications", thus failing to satisfy its burden of production. [Pl's reply at 3].

### *Analysis*

Attorney-client privilege "is an exception ... to the fundamental principle that discovery should be liberal and broad in furtherance of the search for truth." *Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 8 (D.D.C.1991). "While the [attorney-client] privilege serves a very important purpose ... it may nevertheless be an obstacle to the investigation of the truth [and therefore] ... ought to be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 384 (D.D.C.1978) (quoting 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961)); *accord John Labatt Ltd. v. Molson Breweries*, 898 F.Supp. 471, 473 (E.D.Mich.1995). The party asserting attorney-client privilege bears the burden of proving the applicability of the privilege by way of affidavits or other competent evidence. *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y.1996) (citing, e.g., *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 301 (E.D.N.Y. 1992)); *John Labatt Ltd*, 898 F.Supp. at 473. "[T]he proponent must offer more than conclusory statements." *John Labatt Ltd.*, 898 F.Supp. at 477 (citing *Western Trails*, 139 F.R.D. at 11).

"International comity refers to the spirit of cooperation in which a domestic tribunal decides cases touching on the interests of other sovereign states ... 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *In re Honda Am. Motor Co., Inc.*, 168 F.R.D. 535, 535 (D.Md.1996) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)). "[W]here the American federal district court has in personam jurisdiction over a foreign national, corporate entity or an individual, it is not required ... to defer to international comity ... [T]he court can, and should, mandate compliance by a foreign party with Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure for the giving of oral depositions, answering interrogatories, the producing of documents and records, and responding to requests for admissions." *Work v. Bier*, 106 F.R.D. 45, 55–56 (D.D.C.1985).

Federal courts, in certain circumstances, have given deference to foreign statutes and applied the principle of comity if the foreign law is not contrary to the public policy of the forum. *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169 (D.S.C.1974). For example, in *In re Ampicillin Antitrust Litigation*, this Court extended the attorney-client privilege pursuant to British Civil Evidence Act of 1968 to a British patent agent's communications that related *solely to patent activities outside the United States*. 81 F.R.D. at 391; *see Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155–156 (W.D.N.Y.1982). "A similar approach concerning British and French patent agent communications 'relat[ing] to matters *solely* involving France or Great Britain' was adopted by the court in *Duplan Corp.* ... and as a result, these matters were not subject to discovery in the United States." *Detection Sys.*, 96 F.R.D. at 155–156 (quoting *Duplan Corp.*, 397 F.Supp. at 1169–1170)

1977, which was later recodified as the Copyright, Designs and Patents Act of 1988—provided for the patent agent "attorney/client" privilege. *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 306 (E.D.N.Y.1992); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1170 (D.S.C.1974).

(emphasis added). The common denominator of the cases in which federal courts afford comity to foreign statutes governing the privileges of patent agents is that the communications related *solely* to activities outside the United States. *Chubb Integrated Sys. Ltd. v. National Bank of Wash.*, 103 F.R.D. 52, 65 (D.D.C.1984) (citing *Duplan Corp.*, 397 F.Supp. at 1169 and *In re Ampicillin Antitrust Litigation*, 81 F.R.D. at 391). But where the patent application involves persons and activities related to the United States, that is "where the patent agent's communications 'touch base' with the United States, U.S. law applies." *Chubb Integrated Sys. Ltd.*, 103 F.R.D. at 65; *Stryker Corp.*, 145 F.R.D. at 305. The distinction also is noted in *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1444–1445 (D.Del.1989) in its discussion of *Chubb Integrated Sys.*:

> While [the patent agent's activities] may have involved interaction with citizens of other European countries, it appears that these duties never touched base with the United States. Thus, even though [the patent agent's] activities did not relate solely to his native (British) patent office, there is no apparent justification for applying United States privilege law to the withheld documents relating to those activities, since those documents have no relation to this country at all.

*Willemijn Houdstermaatschaapij BV*, 707 F.Supp. at 1445 (citing *Chubb Integrated Sys.*, 103 F.R.D. at 65.).

[1] It is incumbent on this Court, therefore, to determine whether the withheld communications related to the prosecution of the original patent in Great Britain "touch base" in the United States. The defendant, which has the burden of establishing that the privilege applies in the instant action, relies entirely on conclusory assertions that the British statute is applicable. The defendant argues that "[t]here is no dispute that what Plaintiff is seeking goes to the very heart of the privilege enjoyed by Defendant in the United Kingdom as well as in the United States—free and open discussion with their paatent [sic] agent without fear of disclosure to others." [Def's opp. at 4] The defendant also asserts that the "plaintiff is *only* seeking communications in connection with the foreign filed applications which do not "touch base" with the United States." [Def's opp. at 5] (emphasis in original). Further, the defendant has submitted no affidavits or other competent evidence establishing the applicability of the patent agent privilege; the defendant simply asserts "that the documents here sought are the communications from the defendant to Mr. Wain and the legal advice of Mr. Wain on the issue of inventorship in connection with the filing of the British, and later an International (sometimes called Patent Cooperation Treaty ("PCT") application.") [Def's opp. at 4].

In response to the defendant's opposition, the plaintiff argues that the defendant has not met its burden, and further asserts that the defendant "affirmatively claimed the subject British patent application as a priority document for the patent-in-suit, whereby Defendant conferred upon itself the substantive benefit of obviating any potential rejection of its pending U.S. application based on 'prior art' disclosures occurring between the British application's filing date and the U.S. application's filing date (which disclosures include, for example, Plaintiff's own publication in early 1989 in the Journal of Pediatric Neurosciences)." [Pl's reply at 2].

It would be nonsensical for this Court to find that the documents at issue do not touch base with the United States. The defendant does not dispute the patent agent's statement that such documents exist, but were purged from the files prior to the deposition. The correspondence withheld deals with whether the plaintiff, who was a United States citizen at the time of the development of the original patent, was to be named in the original patent as a co-inventor. Finally, the defendant acknowledges that it is upon this British patent that the later US application—the patent-in-suit—is claiming priority pursuant to the International Patent Cooperation Treaty [3] and is seeking protection under a

3. *International application designating the United States; Effect*

An international application designating the United States shall have the effect, from its

letters patent from the United States Patent and Trademark Office. *See* United States Patent Number 5,331,009 "Foreign Application Priority Data": March 23, 1988 [GB] United Kingdom 8804188; [Def's opp. at 2].

Furthermore, the British statute contravenes the public policy of the United States as enunciated in the open discovery rules set forth in the Federal Rules of Civil Procedure and in the decisions of the federal courts. "It is thoroughly established that comity will not be extended to foreign law or rights based thereon if it opposes settled public policy of the forum nation." *Duplan Corp.*, 397 F.Supp. at 1169 (finding "Article 378" of the French Penal Code and § 15(1) of the British Civil Evidence Act provide a cloak of privilege to communications between a client and a person who is not a member of a bar ... [which is] in contravention of the public policy of the United States ... [which is] designed to promote discovery whereas these two foreign statutes necessarily restrict discovery.) *See also In re Honda Am. Motor Co.*, 168 F.R.D. at 539 ("As to the litigants themselves, it would be patently unfair to constrain plaintiffs' ability to discover facts necessary to make their case ... [w]hile the scope of plaintiffs' discovery would necessarily be limited under Japanese law, [the defendant] would have free reign to discover all relevant facts pursuant to the Federal Rules of Civil Procedure.").

It would be against U.S. public policy to limit discovery—thus preclude or hinder claims by United States citizens of patent infringement, by awarding comity to the restrictive discovery laws of Great Britain while at the same time extending the full panoply of our open discovery privileges to foreign defendants that have availed themselves to the protections of U.S. patent and trademark law pursuant to the Patent Cooperation Treaty.

Having found the communications touch base with the United States, this Court must apply U.S. law to determine if the documents were properly withheld pursuant to the common law attorney-client privilege. *See Stryker Corp.*, 145 F.R.D. at 305. The burden is on the party asserting the privilege to establish the facts to prove the applicability of the privilege. "Conclusory or ipse dixit assertions are not enough." *Saxholm AS*, 164 F.R.D. at 333. In the instant action, the defendant makes no assertion that the communications between the British patent agent and the defendant would be protected by a federal common law privilege. The defendant merely "brings to the Court's attention that there are 10 categories of non-privileged documents identified in *Duplan Corp. v. Deering Milliken, Inc.* ... cited by Plaintiff, into none of which categories the sought-after documents fall. Thus, Plaintiff has not shown that U.S. law would find the documents not privilege." [Def's opp. at 4–5]. Such a conclusory statement attempting to shift the defendant's burden to the plaintiff does not satisfy the burden on the party asserting the privilege to establish the applicability of the privilege. As the defendant has not made the requisite showing, neither the attorney-client privilege nor any other common law privilege is applicable to the communications between patent agent C.P. Wain and his client.

With regard to the plaintiff's request for expenses to redepose C.P. Wain, this Court does not agree with the defendant's interpretation of the plaintiff's letter dated September 11, 1996. [Def's opp., exhibit D]. The Court does not find that the plaintiff conceded to the applicability of the patent agent attorney-client privilege for the communications at issue. The plaintiff's acknowledgment of the statute and his statement that the deponent "*may* be able to invoke attorney-client privilege" which was further limited by his statement that he "be-

international filing date under article 11 of the treaty, of a national application for patent regularly filed in the Patent Office except as otherwise provided in section 102(e) of this title.

35 U.S.C. § 363. *Right of Priority; benefit of the filing date of a prior application*

(b) In accordance with the conditions and requirements of the first paragraph of section 119 of this title and the treaty and the Regulations, an international application designating the United States shall be entitled to the right of priority based on a prior foreign application, or a prior international application designating at least one country other than the United States.

35 U.S.C. § 365(b)

lieve[s] that there would be a very limited number of communications which would fall within the privilege" [Def's opp., exh. D] (emphasis added) does not convince the Court that "Plaintiff's attorney *recognized* the British patent agent privilege prior to the date of production and deposition by Mr. Wain". [Def's opp. at 4] (emphasis in original). The Court's interpretation is supported by sentences in the same paragraph on page two of the letter in which the only thing the plaintiff concedes is that, if the privilege is asserted during depositions across the Atlantic, a conference call to this United States Magistrate Judge may not be feasible. [Def's opp., exh. D at 2]. In the same letter, the plaintiff also points out that he is only seeking "production of those documents which [the defendant] indicated [it] would produce (without a motion to compel)" in its response to interrogatory no. 8. The plaintiff reasonably temporally limited the document request to communications that discuss Mr. Odone as an inventor in the original British patent. The defendant has made neither an assertion nor a showing that these documents would fall outside umbrella of interrogatory no. 8 to which the defendant agreed to produce documents if temporally limited.

## ORDER

Upon consideration of the plaintiff's motion, the opposition, reply and the entire record, the Court finds (1) that the withheld communications between C.P. Wain and the defendant "touch base" with the United States, thus the Court will not recognize the privilege in the interest of comity, but instead will apply the federal discovery rules and federal common law privileges; (2) that it would be against public policy to limit the plaintiff's discovery by granting comity to a restrictive British statute, yet permit the defendant the unfettered access to plaintiff's documents pursuant the federal open discovery rules and provide the protections of the Federal Rules of Civil Procedure as well as of the patent and trademark laws; and (3) that the defendant did not meet the burden of proof to establish the applicability of any common law privileges recognized by the federal courts. It is, therefore, this 15 day of January 1997,

**ORDERED** that the defendant shall produce for the plaintiff in Washington, DC, the communications requested in interrogatory no. 8;

**FURTHER ORDERED** that the defendant, at the defendant's expense, shall make its patent agent, C.P. Wain, available for a duly noticed deposition to respond to questions relating to or touching upon the issue of whether to name the plaintiff as an inventor in the original British patent; and

**FURTHER ORDERED** that the parties shall bear their own costs for bringing and opposing this motion.